UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 08-61851-CIV-LENARD/GARBER

| | |
|---|---|
| MAROLINE BORDEN AND WILLIAM BORDEN, | ) ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| SAXON MORTGAGE SERVICES, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR NATIXIS 2007-HE2, MASTER FINANCIAL, INC., and ATLANTIC PIONEER MORTGAGE, INC. | ) ) ) ) ) ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Saxon Mortgage Services, Inc. ("Saxon") and Deutsche Bank National Trust Company ("Deutsche"), as trustee for NATIXIS Real Estate Capital Trust 2007-HE2 and through Saxon as its attorney-in-fact, (collectively "Defendants") and hereby make the following legal arguments in support of their motion for summary judgment. All exhibits referenced herein are attached to the Statement of Undisputed Facts filed contemporaneously herewith.

## I.   PROCEDURAL HISTORY

Plaintiffs filed their Complaint against Saxon on July 18, 2008 in the Circuit Court for the Seventeenth Judicial District in and for Broward County, Florida, stating one cause of action for violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72. (*See* Original Complaint, Exh. A to Doc. 1).  On October 29, 2008, Plaintiffs filed an Amended Complaint adding Master Financial, Inc. ("Master Financial"), Atlantic Pioneer Mortgage Company ("Atlantic Pioneer"), and Deutsche as defendants. (*See* Amended Complaint, Exh. A to Doc. 1). Plaintiffs' Amended Complaint stated the following additional claims:  (1) violations of the

1/1930595.3

Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"); (2) violations of the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* and Regulation Z, CFR § 226.19(a)(1); (3) violation of the Right to Cancel; (4) violation of Florida's Deceptive and Unfair Trade Practices Act; (5) pattern of criminal activity under Florida's Racketeer Influenced and Corrupt Organization ("RICO") Act, Fla. Stat. § 772.101-104; (6) intentional infliction of emotional distress; (7) violations involving senior citizens, Fla. Stat. § 501.2077; (8) conspiracy to commit fraud; (9) fraud; (10) rescission; and (11) breach of fiduciary duty. (*See id.*). Defendants removed the action to the United States District Court in and for the Southern District of Florida on November 13, 2008. (*See* Notice of Removal, Doc. 1). Upon leave from the Court, Defendants filed their Amended Answer to Amended Complaint in which Defendants stated claims against Plaintiffs for breach of contract and fraud. (*See* Amended Answer, Doc. 89). Final default judgment has been entered against Master Financial. (8/18/09 Order, Doc. 94).

## II. ARGUMENT

### A.   Plaintiffs' claim for intentional infliction of emotional distress should be dismissed with prejudice.

Plaintiffs allege that "[t]he stress of the possibility of losing their home has caused dramatic hardship for the Bordens" and that "[b]ecause of the extreme stress he was under when faced with the possibility of losing his home, William Borden has since suffered a heart attack and required medical and hospital attention." (Amended Complaint, ¶¶ 102, 104, Exh. A to Doc. 1). These allegations are directly contradicted by evidence in the record and, even if true, do not support a claim for intentional infliction of emotional distress. A claim for intentional infliction of emotional distress requires conduct that is outrageous or, in other words, exceeds all bounds of decency and is not to be tolerated in a civilized society. *See Dominguez v. Equitable*

2

*Life Assurance Soc'y of the U.S.*, 438 So. 2d 58, 59 (Fla. Dist. Ct. App. 1983), *decision approved sub. nom. Crawford & Co. v. Dominguez*, 467 So. 2d 281 (Fla. 1985). The standard for outrageous conduct is particularly high and cannot be met in cases where the actor has done no more than insist upon his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional distress. *Metro.*, 467 So. 2d at 279; *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1213 (Fla. Dist. Ct. App. 1995). Plaintiffs' claim is based solely upon Defendants' enforcement of their legal right to foreclose on Plaintiffs' loan pursuant to the terms of the mortgage contract and, therefore, does not equal outrageous conduct, especially when there is no dispute that Plaintiffs failed to make their mortgage payments. (M. Borden Depo, pp. 109, 118-19, Collective Exh. B).

Plaintiffs were notified of the potential foreclosure of their home via letter. (*Id.* at pp. 120-21). Plaintiffs testified during their depositions that they knew the letter was coming because they had failed to make their mortgage payments. (*Id.*; W. Borden Depo, pp. 16-18, Collective Exh. S). Plaintiffs admit that the letter merely informed them that they either had to pay the amount due on their loan or their home would be subject to foreclosure. (W. Borden Depo, pp. 16-18, Collective Exh. S). Plaintiffs do not contend that the letter contained any abusive or harassing language. (*Id.*). Moreover, despite Plaintiffs' allegations that Defendants have caused Mr. Borden to suffer a heart attack, Mr. Borden admitted during his deposition that his doctors have never actually told him that he suffered a heart attack. (*Id.* at p. 25). Mr. Borden's medical records indicate that he merely suffered chest pains -- **not a heart attack** – and further implied that the chest pains were likely attributed to Mr. Borden's family history of heart disease and his personal diabetes, which can increase the risk for heart disease. (W.

Borden Medical Records, Exh. W).  Accordingly, Plaintiffs' claim for intentional infliction of emotional distress should be dismissed with prejudice.

**B.**      **Plaintiffs' fraud claim should be dismissed with prejudice because Plaintiffs do not allege that Defendants made any misrepresentations to them, and Defendants are not liable for any fraud allegedly committed by Atlantic Pioneer.**

**1.**      **Saxon and Deutsche did not make any fraudulent statements to Plaintiffs.**

Plaintiffs' Amended Complaint is clear that Plaintiffs' fraud claim is based upon alleged statements made only by Atlantic Pioneer and not any other defendant.  (*See* Amended Complaint, ¶¶ 127-132, Exh. A to Doc. 1).  Furthermore, in their respective depositions, both Mr. and Mrs. Borden testified that they have never spoken to Deutsche and have not had any communications with Deutsche other than receipt of a notice of foreclosure letter from Deutsche. (W. Borden Depo, p. 29, Collective Exh. S; M. Borden Depo, pp. 144-45, Collective Exh. B). Plaintiffs also testified that Saxon has never made any fraudulent statements to them.  (W. Borden Depo, p. 31, Collective Exh. S).  Accordingly, Plaintiffs cannot maintain their fraud claim against Saxon and Deutsche, and the fraud claim should be dismissed with prejudice.

Plaintiffs also cannot hold Saxon and Deutsche liable for the alleged misrepresentation of Mrs. Borden's employment information in the loan application.  In connection with the mortgage loan, Plaintiffs completed a Uniform Residential Loan Application (the "Application") (9/21/06 Application, Exh. I).  The Application states that Maroline Borden was employed by Mastec, located at 14650 NW 102nd Avenue, Hialeah Gardens, Florida  33018, and earned $6,735.00 per month.  (*Id.*).  In their Amended Complaint, Plaintiffs state that the income and employment information for Mrs. Borden listed on the Application is not hers and that Mrs. Borden's real income and employment information would not have been sufficient to receive the loan at issue.

(Amended Complaint, ¶¶ 35-36, Exh. A to Doc. 1).  Plaintiffs allege that Mrs. Borden gave Ms. Avila her correct employment information but that Ms. Avila falsified the employment information that was ultimately disclosed on the Application.  Nonetheless, Plaintiffs admittedly signed the Application at the time of closing and thereby represented to Master Financial that Mrs. Borden was an employee of Mastec and earned $6,375.00 per month.   (M. Borden Depo., pp. 174-76, Collective Exh. B).  The Application states – and Mrs. Borden confirmed during her deposition – that the Application was completed during a face-to-interview with Ms. Avila.  (*Id.*, at p. 176).   By executing the Application, Mrs. Borden acknowledged and agreed to the following, in relevant part:

> Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that:   (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application…(4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan…(7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan.

(Application, Exh. I).  No matter how rushed the closing may have been Plaintiffs should have at least confirmed their personal information.  As a result, Plaintiffs reaped the benefits obtaining a loan for which they otherwise would not have qualified.

It is undisputed that Saxon and Deutsche had no involvement in the loan origination.

5

Based upon the origination file Defendants received, they had no reason to suspect that the employment information stated on Plaintiffs' loan application was incorrect.  (Saxon, Aff., Exh. F).  Mrs. Borden's supposed employment with Mastec was corroborated by two other documents contained within the loan origination file, the Request for Verification of Employment and the Employment Verification form.  (Request for Verification of Employment, Exh. K; Employment Verification Form, Exh. J).  There were no documents in the origination file suggesting that Mrs. Borden was employed by the The GEO Group, Inc. or suggesting that Mrs. Borden had not actually been employment by Mastec.  (Saxon Aff., Exh. F).  Accordingly, Defendants should not be held liable for fraud based upon these allegations.

### 2.    Plaintiffs' fraud claim fails to the extent that it is based on opinions, as opposed to misrepresentations of material fact.

Plaintiffs' fraud claim should be dismissed on the additional ground that the alleged statements supporting their claim are not actionable.  Accordingly, even if Plaintiffs' allegations are true, they still do not support a claim for fraud.  In their Amended Complaint, Plaintiffs allege that "[t]he false representations were that:  (a) The interest rate would be 8.5%; and b) The loan was a good product for the Bordens; (c) the Bordens would be able to pay off the loan; and (d) the Bordens would be able to refinance the loan."  (Amended Complaint, ¶ 132, Exh. A to Doc. 1).  Such statements are mere opinions and, therefore, cannot support a cause of action for fraud.  *See, e.g., Thompson v. Bank of New York*, 862 So. 2d 768, 770 (Fla. 4th DCA 2003).

In the *Thompson* case, the only specific allegation of fraud was that the seller of the underlying real estate represented that the borrower, Thompson, was "financially able to qualify and afford the subject premises."  *Id.*  The court affirmed dismissal of the borrower's fraud claim on the grounds that "whether Thompson was financially able to qualify for the loan was a matter of opinion."  *Id.* at 770-71.  Moreover, the court noted that "[w]hether Thompson could afford

the loan was an opinion involving facts more available to Thompson than to the seller; Thompson had to know his own financial capacity better than a stranger." *Id.* at 771.  *See also Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995) (finding that seller's statements that the building was a "very good building" requiring "normal type of maintenance" and "an excellent deal," were clearly statements of opinion and not fraudulent misrepresentations).  The alleged statements forming the basis of Plaintiffs' fraud claim are mere opinions and are not actionable.

Plaintiffs should be required to take some degree of personal responsibility for their transaction.  Plaintiffs knew better than anyone whether the loan at issue was a good product for them and whether they would be able to pay off the loan.  Plaintiffs' fraud claim should be dismissed with prejudice.

### C. **Plaintiffs' claim for conspiracy of fraud should be dismissed with prejudice because Defendants did not directly participate in any fraud and had no relation to this loan at the time of the alleged fraud.**

Plaintiffs vaguely allege that "Defendants participated in a full-scale venture to induce innocent homeowners, such as the Bordens, to borrow funds at exaggerated rates and with negative terms, such as prolonged penalties, for the purpose of deriving great profits." (Amended Complaint, ¶ 124, Exh. A to Doc. 1).  As discussed above, the alleged misrepresentations made by Atlantic Pioneer to induce Plaintiffs to enter into the mortgage contract at issue do not support a claim for fraud and, therefore, cannot form the basis of a claim for conspiracy to commit fraud. *See Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1998) ("[A]n actionable conspiracy requires an actionable underlying tort or wrong").  Plaintiffs' claim for conspiracy to commit fraud should be dismissed with prejudice on this ground alone.

Regardless, Saxon and Deutsche cannot be held liable for conspiracy to commit fraud. Saxon and Deutsche could not have taken any action in furtherance of this alleged conspiracy

because they were not involved in the origination of Plaintiffs' loan and did not acquire their respective interests in Plaintiffs' loan for at least six months after the loan origination.  (M. Borden Depo, pp. 24-25, Collective Exh. B; Saxon Aff., Exh. F).  In order to maintain a claim for conspiracy to commit fraud, Plaintiffs must have evidence of the following:   1) an agreement between two or more parties; 2) to do an unlawful act or to do a lawful act by unlawful means; 3) the doing of some overt act in pursuance of the conspiracy; and 4) damage to plaintiff as a result of the acts done under the conspiracy.  *See Raimi*, 702 So. 2d at 1284; *accord Charles v. Fla. Foreclosure Placement Center,* 988 So. 2d 1157, 1159-60 (Fla. 3d DCA  2008).  The alleged conspirators must have knowledge the conspiracy is taking place and must knowingly take part in it.  *Id.* at 1285; *Karnegis v. Oakes,* 296 So. 2d 657, 659 (Fla. 3d DCA 1974) (citing the lack of evidence to overcome defendant's testimony that he was unaware of the conspiracy as reason for not holding defendant liable).   Because the conspiracy to commit fraud alleged by Plaintiffs occurred prior to and during the loan origination, it is impossible for Plaintiffs to prove knowing participation by Defendants and, therefore, Plaintiffs' claim is due to be dismissed.  *See Menendez v. Beech Acceptance Corp.,* 521 So. 2d 178, 180 (Fla. 3d DCA 1988) ("Some proof of knowledge of a conspiracy, and participation in it by the alleged tortfeasor, must be shown in order to survive a motion for summary judgment.").

Furthermore, receiving a benefit from an alleged conspiracy is not enough to sustain a claim for such conspiracy.  *Raimi,* 702 So. 2d at 1285; *see Karnegis,* 296 So. 2d at 659 (acknowledging that attempting to prove participation in a conspiracy simply because defendant benefitted from it amounts to pure speculation).  Indeed, alleging that a mortgage company participated in a conspiracy to defraud mortgage consumers by buying loans and providing money to those actually committing the fraud is not enough to establish a conspiracy to commit

fraud claim. *See James v. Nationsbank Trust Co. Fla. Nat'l Assoc.,* 639 So. 2d 1031, 1032 (Fla. 5th Dist. Ct. App. 1994).  When the mortgage company does not participate in the origination or distribution of the loan and there is no further evidence the mortgage company knowingly participated in any scheme to defraud consumers, a claim for conspiracy to commit fraud will not be sustained. *See id.* at 1033.  Purchasing mortgages with the knowledge that fraud has been committed by the company selling the loans and knowing that the fraud can only be perpetuated by the cash flow from such purchases is not enough support to hold the purchasing company liable for any fraud that took place during the origination of the loans. *Id.*  Even if Plaintiffs did have evidence suggesting that Saxon and Deutsche were aware of the alleged misrepresentations committed by Master Financial and Atlantic Pioneer – which they do not – mere knowledge of said conspiracy would not be sufficient to hold Saxon and Deutsche, as servicer and trustee, respectively, liable for fraud.   Plaintiffs' claim for conspiracy to commit fraud should be dismissed with prejudice.

**D.**     **Plaintiffs are not entitled to rescission of their loan.**

Plaintiffs base their request for rescission of the mortgage on their allegation that they were fraudulent induced to enter into the mortgage contract.  (Amended Complaint, ¶ 135-141, Exh. A to Doc. 1).  For the reasons discussed above, Plaintiffs' fraud claims against Defendants fail.  Therefore, Plaintiffs are not entitled to rescission of their loan, particularly when Plaintiffs have never given any notice of their intent to rescind prior to filing this lawsuit.  Plaintiffs paid their mortgage payments for over a year until Mrs. Borden became unemployed in December 2007.  Plaintiffs only seek to rescind their loan now that they are facing foreclosure. *See Farnham v. Blount*, 11 So. 2d 785, 788-89 (Fla. 1942) (denying rescission of a mortgage contract based on fraud where the alleged defects were known by the plaintiffs several years prior to

giving notice of their intent to foreclosure and because plaintiffs only instituted suit once they could not longer make their payments due to the depression of 1930 and 1931).

Furthermore, Plaintiffs allege in their Amended Complaint that no adequate remedy exists at law.  (Amended Complaint, ¶ 143, Exh. A to Doc. 1).  This is not true.  In entering default judgment against Master Financial, this Court has calculated the difference between the loan with an 8.5% interest rate that Plaintiffs were allegedly promised and the loan that Plaintiffs actually received to be $123,547.06.  This is also the amount of compensatory damages Plaintiffs say they are requesting in this lawsuit.  (*See* Default Judgment; Interrogatory Responses, Exh. A).  Furthermore, even if Plaintiffs are entitled to rescission, which they are not, they should only be entitled to rescind the portion of the loan that exceeds the payoff amount of Plaintiffs' prior mortgage with Ameriquest.  *See Assoc. First Capital Corp. v. Booze*, 912 So. 2d 696, 698 (Fla. 2d DCA 2005) (stating that if the refinancing involves a new advance of money, the amount of the new advance is rescindable; plaintiffs should only be placed in the position they were in prior to entering into the new credit transaction).

   **E.** **Plaintiffs' claim for violations of the Florida Deceptive and Unfair Trade Practices Act should be dismissed because Plaintiffs do not allege that any conduct of Saxon or Deutsche was deceptive, and Maroline Borden was not a "senior citizen" at the time of the loan closing.**

Plaintiffs have stated claims for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA").  Florida Statute Section 501.204(1) makes unlawful "[u]nfair methods of competition and unfair or deceptive practices in the conduct of any trade or commerce."  To maintain their claim under the FUDPTA, Plaintiffs must provide evidence of the following:  (1) a deceptive or unfair trade practice; (2) causation; and (3) actual damages.  FLA. STAT. § 501.203(3).  An unfair practice is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

*PNR, Inc. v. Beacon Property Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). "Deception" occurs if "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.* The allegations of Plaintiffs' Amended Complaint are clear that the alleged conduct giving rise to these claims is limited to conduct which occurred at the time of the loan closing, to which Saxon and Deutsche were not involved. (Amended Complaint, ¶ ¶ 84-92, Exh. A to Doc. 1). Plaintiffs do not complain of any deceptive conduct committed by Saxon or Deutsche. Therefore, Plaintiffs claims for violations of the FDUTPA, including their claim under § 501.2077 prohibiting unfair or deceptive conduct against senior citizens, should be dismissed with prejudice.

Plaintiffs' claim under § 501.2077 of the FDUPTA should be dismissed on the additional ground that Maroline Borden was not a senior citizen at the time of the loan closing. The statute defines "senior citizen" as a person sixty (60) years of age or older. FLA. STAT. § 501.2077(1)(a). The only alleged acts of deception at issue in this action occurred during the origination of this loan and, therefore, would have taken place at least by September 21, 2006, the date of the loan closing. (*See generally*, Amended Complaint, Exh. A to Doc. 1). Mrs. Borden was born on June 1, 1947. (M. Borden Depo, p. 5, Collective Exh. 5). Because she was only 59 years of age at the time of the loan closing, she did not qualify as a "senior citizen" at the time that the alleged deceptive conduct occurred.

1/1930595.3

**F.**   **Plaintiffs' Consumer Collection Practices Act claim should be dismissed with prejudice because Defendants are not debt collectors, Defendants' alleged conduct was not in the course of collecting a debt, and Plaintiffs do not have any evidence of alleged harassing telephone calls made by Saxon.**

**1.**   **Saxon and Deutsche are not debt collectors.**

Saxon and Deutsche cannot be held liable under Florida's Consumer Collection Practices Act because they are not "debt collectors" as defined by the Act.  Florida Statute Section 559.55 specifically excludes the following from the definition of a "debt collector":

> (f) Any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent that such activity …concerns a debt which was not in default at the time it was obtained by such person.

Fla. Stat. § 559.55(6)(f).  Courts within the Eleventh Circuit have found that the same exclusion found in the Act's federal counterpart "applies only to debt collectors **and not to creditors or mortgage servicers."**  *See, e.g., Bates v. Novastar/Nationstar Mortgage LLC*, Civ. Action File No. 1:08-CV-143-TWT, 2008 WL 2622810, at *5 (N.D. Ga. June 24, 2008); *Hennington v. Greenpoint Mortgage Funding, Inc.*, Civ. Action Nos. 1:09-CV-00676-RWS, 1:09-CV-00962-RWS, 2009 WL 1372961, at *6 (N.D. Ga. May 15, 2009) ("It is well established that the FDCPA applies only to debt collectors and not to creditors or mortgage servicers.").  Accordingly, Saxon and Deutsche are both exempt from liability under the Florida Consumer Collection Practices Act, and Plaintiffs' claim should be dismissed with prejudice on this ground alone.

**2.**   **Defendants' alleged conduct was not in the course of collecting a consumer debt.**

Plaintiffs' claim should be dismissed on the additional ground that the alleged conduct at issue was not in the course of collecting a debt.  Plaintiffs seek recovery pursuant to Florida Statute Sections 559.72(7), which requires the conduct complained of to have been committed in the collection of a consumer debt.  FLA. STAT. § 559.72(7).  Plaintiffs allege that on or about July

17, 2008, they discovered a supposed agent for Saxon trespassing on their property and taking photographs of the property.  (Amended Complaint, ¶ ¶ 145-46, Exh. A to Doc. 1).  Saxon disputes that any person acting on its behalf trespassed onto Plaintiffs' property.  Regardless, no agent of Saxon has ever come onto Plaintiffs' property *for the purpose of debt collection*.  It is clear from Mrs. Borden's deposition testimony that the alleged agent of Saxon that Mrs. Borden saw was merely taking photographs of her property and was not attempting to collect a debt. (M. Borden Depo, pp. 154-160, Collective Exh. B). Common sense dictates that taking photographs of Plaintiffs' property is not related in any way to the collection of a debt.  In fact, by the time this incident occurred, Plaintiffs' loan had already been referred to foreclosure due to Plaintiffs' admitted failure to make their monthly mortgage payments.  (*Id.* at 154).

> **3.     Plaintiffs do not have any evidence of Saxon's alleged harassing telephone calls to Plaintiffs.**

Plaintiffs also allege that agents of Saxon repeatedly called them regarding their missed payments and that the agents sometimes called during non-business hours.  However, the burden of proof rests with the Plaintiffs in proving that the conduct of the Saxon employee was within the scope of the Florida Consumer Collection Practices Act (FCCPA).  *See Heard v. Matthes*, 344 So. 2d 651, 655 (Fla. 1st Dist. Ct. App. 1977) (holding that the person bringing a statutory claim must prove the conduct complained of is within the purview of the statute). Plaintiffs have no evidence of the alleged telephone calls other than their uncorroborated deposition testimony. Mrs. Borden testified during her deposition that she did not keep any notes of the times that Saxon called Plaintiffs.  (M. Borden Depo, p. 43, Collective Exh. B).  Plaintiffs' indicated in response to Defendants' Second Request for Interrogatories that the only evidence of the alleged calls would be in Saxon's possession.   (Responses to 2d Interrogatories, Exh. T).  According to Saxon's records, an agent of Saxon called Plaintiffs an average of once per

13

each missed or late payment and that Mrs. Borden's attitude during the calls was cooperative. (Call Notes, Exh.  R).  Plaintiffs do not dispute that Saxon had the right to notify them of missed mortgage payments.  (W. Borden Depo, p. 17, Collective Exh. S).

**G.**  **Plaintiffs' TILA claim should be dismissed with prejudice because servicers such as Saxon are exempt from liability under TILA, and there were no TILA violations apparent on the face of the loan documents.**

**1.**  **Servicers such as Saxon are exempt from liability under the TILA.**

Servicers with no ownership interests in the subject loan are exempt from liability under TILA.  15 U.S.C. § 1641(f) (A "servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for the purposes of this section unless the servicer is or was the owner of the obligation." ). Because there is no dispute that Saxon is merely the servicer of Plaintiffs' loan and does not have any ownership interest in the loan, Saxon cannot be held liable for any alleged violations of TILA.  (Saxon Aff., Exh. F). Plaintiffs' TILA claim against Saxon should be dismissed with prejudice.

**2.**  **With respect to Deutsche, any alleged TILA violation is time-barred pursuant to TILA's one year statute of limitations.**

To the extent Plaintiffs claim they are entitled to damages under TILA, such a claim is barred by the statute of limitations.  An action to recover damages under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).  The "date of the occurrence of the violation" is the date the loan transaction closed.  *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984).  Indeed, federal courts have been steadfast in holding that "[a] violation of TILA occurs no later than the date of the settlement of the loan."  *Winstead v. EMC Mortgage Corporation*, 2009 WL 1565808, at *2 (D.D.C.) (holding that a borrower could not obtain an injunction halting foreclosure based on alleged TILA violations because such alleged TILA violations occurred more than one year from the consummation of the loan).

14

In this case, Plaintiffs' loan closed on September 21, 2006. (Mortgage, Exh. H). Plaintiffs filed their Amended Complaint on October 29, 2008, well beyond the one-year statute of limitations. Plaintiffs' claim was clearly brought more than one year after the settlement of the loan and, therefore, is barred by the statute of limitations.

### 3.      Plaintiffs' TILA claim against Deutsche fails on its merits.

Assuming *arguendo* that Plaintiffs' TILA claim survives the deficiency discussed above, which it cannot, their TILA claim still fails on the merits. As an assignee of the loan, Deutsche cannot be held liable for alleged violations of TILA unless Plaintiffs prove the following: (1) the violation for which such action is brought is apparent on the face of the disclosure statement; and (2) the assignment to the assignee was voluntary. *See* 15 U.S.C. § 1641(e) (governing assignee liability in a credit consumer transaction secured by real property). As shown below, Plaintiffs cannot prove any TILA violations, much less any violations that would have been apparent on the face of the loan documents.

First, Plaintiffs' allege that they "were provided with several different Truth in Lending forms, each filled out with different numbers." (Amended Complaint, ¶ 71, Exh. A to Doc. 1). This allegation is nonsensical because TILA requires that borrowers receive pre-closing disclosures, thereby making it necessary for Plaintiffs to have received more than one disclosure statement. *See* Regulation Z, CFR § 226.19(a)(1). Plaintiffs' received three TILA Disclosure Statements – two preliminary statements and one final statement. The first, dated August 3, 2006, is clearly marked "preliminary," was not signed by Plaintiffs, and, moreover, stated that the lender was Equifirst Corporation. (8/3/06 Preliminary Disclosure Statement, Exh. N). This document was not contained within the origination file received by Defendants, and Defendants were not aware of this document until it was produced by Plaintiffs in connection with this lawsuit. (Saxon Aff., Exh. F). The second TILA Disclosure Statement, dated September 12,

2006, is also marked "preliminary" and has not been signed by Plaintiffs.  (9/12/06 Preliminary Disclosure Statement, Exh. O).  The second preliminary statement indentifies Master Financial as the lender, thereby negating Plaintiffs' allegation that Master Financial failed to provide the required disclosures prior to the loan closing.  (*Id.*).  The second preliminary disclosure statement states an interest rate, finance charge, and amount financed which are slightly higher than the charges stated on the final TILA Disclosure Statement signed by Plaintiffs at the time of closing.  (*Id.*; 9/21/06 Final Disclosure Statement, Exh. M).  However, the differences between the two statements are inconsequential.  Early TILA disclosures are not binding with regard to the amounts disclosed; rather, they are estimates of the amounts that will appear on the final TILA disclosures.  *See* Reg. Z, 12 CFR § 226.19(a)(1).

Plaintiffs also allege that Defendants failed to clearly and accurately disclose the following:  the amount financed; the finance charge; the annual percentage rate (including any variable feature disclosure); the number, amounts, and timing of payments scheduled to repay the obligation; the total of payments; and incorrect disclosure of any variable rate feature.  (Amended Complaint, ¶¶ 71-73, Exh. A to Doc. 1).  Contrary to Plaintiffs' allegations, the final TILA Disclosure Statement accurately states the loan charges.  The box next to "Variable Rate Feature" is left blank because the loan received by Plaintiffs was a thirty-year fixed rate loan.  (*Id.*). Contrary to Plaintiffs' allegations, the variable rate feature was correctly disclosed.  Furthermore, the final TILA Disclosure Statement states the following charges:  9.862% is the annual percentage rate; $622,672.72 is the finance charge, i.e., the dollar amount the credit would cost Plaintiffs if they had paid their loan in full; $293,340.00 as the amount financed; and $916,012.72 as the total of payment, i.e., the amount Plaintiffs would have paid after they had made all payments as scheduled; and that.  (*Id.*).  Note that page 2 of the TILA Disclosure

Statement, which Plaintiffs initialed, clarified that the Annual Percentage Rate "is not the Note rate for which the borrower applied.  The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one charge…The APR is calculated by spreading these charges over the life of the loan **which results in a rate generally higher than the interest rate shown on your Mortgage/Deed of Trust**."   (*Id.* at p. 2) (emphasis added).   Accordingly, that the APR shown on the TILA Disclosure Statement is higher than the interest rate shown on Plaintiffs' Mortgage is of no consequence.  For these reasons, Plaintiffs' claim fails on its merits and should be dismissed with prejudice.

> **H.**     **Plaintiffs' claim for violation of the right to cancel should be dismissed because a servicer such as Saxon cannot be held liable for violations of the the Truth in Lending Act, and the evidence shows that Plaintiffs did receive notice of their right to cancel.**

Florida law does not recognize a violation of the right to cancel as a distinct claim. Rather, Florida courts have held that a creditor's failure to disclose a debtor's right to cancel is a violation of the Truth in Lending Act ("TILA").  *Yslas v. D. K. Guenther Builders, Inc.*, 342 So. 2d 859, 860 (Fla. Dist. Ct. App. 1977).  This distinction is important, as servicers with no ownership interest in the loan at issue are exempt from liability under the Truth in Lending Act and, therefore, Saxon cannot be held liable even if Plaintiffs did not receive notice of their right to cancel.  *See* 15 U.S.C.§ 1641(f).  Plaintiffs' claim against Saxon for violation of the right to cancel is due to be dismissed with prejudice.

This claim should also be dismissed against Deutsche, as the evidence shows that Plaintiffs did receive notice of their right to cancel.  Plaintiffs alleged in their Amended Complaint that they signed a Statement of Non-Rescission at the time of the loan closing and that by doing so, Plaintiffs were mislead into believing that they had waived their right to cancel the

loan.  (Amended Complaint, ¶¶ 79-83, Exh. A to Doc. 1).  This allegation is inconsistent with the evidentiary record.  The only Statement of Non-Rescission form produced by any party to this action remains unsigned.  (Stmt. Non-Rescission, Exh. Y).  Furthermore, the Statement of Non-Rescission has nothing to do with informing Plaintiffs of their right to cancel the loan. Plaintiffs did sign a Notice of Right to Cancel form which clearly explained Plaintiffs' right to cancel and the procedure by which Plaintiffs could cancel their loan should they have chosen to do so.  (Notice of Right to Cancel, Exh. P).

Under TILA, notice of the right to cancel does not have to be perfect so long as the notice is clear and conspicuous.  *See Veale v. Citibank, F.S.B.* 85 F.3d 577, 581 (11th Cir. 1996). Plaintiffs signed a Notice of Right to Cancel on September 21, 2006, the date of the loan closing. By signing the Notice, Plaintiffs "acknowledge[d] receipt of two copies of <u>NOTICE OF RIGHT TO CANCEL</u> and one copy of the Federal Truth in Lending Disclosure Statement."  (Notice of Right to Cancel, Exh. P).  The text directly above the signature line stated that "[e]ach borrower/owner in this transaction has the right to cancel.  The exercise of this right by one borrower/owner shall be effective to all borrowers/owners."  (*Id.*).  The top portion of the Notice contained the heading "**YOUR RIGHT TO CANCEL**" in bold, all capital letters.  (*Id.*) (emphasis in original).   The Notice informed Plaintiffs of their "legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:  (1) The date of the transaction, which is September 21, 2006; or (2) The date you received your Truth in Lending disclosures; or (3) The date you received this notice of your right to cancel."  (Notice of Right to Cancel, Exh. P) (emphasis in original).  Plaintiffs' Notice also included the heading "**HOW TO CANCEL**," under which Plaintiffs were instructed to notify Master Financial in writing if they decided to cancel the transaction.  (*Id.*) (emphasis in

18

original). The Notice provided the address to which any written notice of cancellation should be mailed and stated that Plaintiffs could cancel their loan "us[ing] any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below."  (*Id*). Plaintiffs were instructed to sign directly below the words "**I WISH TO CANCEL**" in the event that they chose to cancel the loan.  (*Id.*).  Accordingly, Plaintiffs receive clear and conspicuous notice of their right to cancel and their claim should be dismissed with prejudice.

### I.   <u>Plaintiffs' claim for pattern of criminal activity should be dismissed with prejudice.</u>

Plaintiffs' claim for pattern of criminal activity under Florida's Racketeer Influenced and Corrupt Organizations Act ("RICO"), Florida Statute § 772.101-104, should be dismissed with prejudice.  As an initial matter, Plaintiffs have failed to file a Civil RICO Case Statement pursuant to Local Rule 12.1 and should be dismissed on this ground alone.  Nonetheless, Plaintiffs' claim still fails on the merits.  To maintain a RICO claim under Florida law, Plaintiffs must prove the following:  (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.  *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311 (11th Cir. 2000). This claim requires little analysis as this action is simply not the type of case in which a RICO claim is appropriate.  This action concerns only one private mortgage transaction.  To establish a pattern of criminal activity under Florida law the plaintiffs must prove at least two incidents of criminal activity **which must not arise out of a single contract.**  Fla. Stat. § 772.102(4). Futhermore, Defendants' alleged conduct in this case is of the type that Defendants would regularly conduct in their respective capacities as a loan servicer and trustee, thus making it impossible for Plaintiffs to provide evidence of an "enterprise" which is distinct from Defendants' regular business. *See Acosta v. Campbell*, No. 6:04CV761ORL28DAB, 2006 WL

146208, at *6 (M.D. Fla. 2006).  In *Acosta*, the plaintiffs RICO claim was dismissed because the only conduct complained of was conduct that the defendants, Mortgage Capital Associates, Inc. and CitiMortgage/Citibank, regularly engage in for the purpose of originating, settling, and investing in mortgages and did not constitute enterprise activities separate and apart from these regular business activities .  *Id.* The Court need not engage in any further analysis of Plaintiffs' RICO claim, as this lawsuit obviously relates to Plaintiffs' mortgage transaction only, and Plaintiffs have not alleged nor provided evidence of any enterprise separate and apart from Defendants' regular business.  Plaintiffs' claim should be dismissed with prejudice.

**J.**      **Plaintiffs' breach of fiduciary duty claim does not request relief from Defendants and, therefore, should be dismissed with prejudice.**

Plaintiffs' breach of fiduciary duty claim should be dismissed with prejudice as to Saxon and Deutsche.  The Amended Complaint is clear that Plaintiffs seek judgment only against Master Financial and Atlantic Pioneer for breach of fiduciary duty.  (Amended Complaint, p. 18, Exh. A to Doc. 1).  The only alleged fiduciary relationship referenced in support of this claim is Plaintiffs' relationship with their mortgage broker, Atlantic Pioneer, and the relationship between Plaintiffs and Saxon or Deutsche do not give rise to any fiduciary duty.  (*Id.* at ¶¶ 105-115). Moreover, both Plaintiffs testified during their depositions that they had never heard of Deutsche until they received a notice of foreclosure letter on or about July 8, 2008.  (M. Borden Depo, p. 151, Collective Exh. B; W. Borden Depo, p. 29, Collective Exh. S).  Plaintiffs' breach of fiduciary duty claim should be dismissed with prejudice.

**K.**      **The FIRREA does not provide a private right of action, and, therefore, Plaintiffs' claim under the statute should be dismissed with prejudice.**

There is no private right of action under the FIRREA relating to real estate appraisals, and, therefore Plaintiffs' claim under this statute should be dismissed with prejudice.  *See Bolden*

*v. KB Home*, 618 F. Supp. 2d 1196, 1206 (C.D. Cal. 2008).  *See also Cedeno v. IndyMac Bancorp, Inc.*, No. 06-Div. 6438(JGK), 2008 WL 3992304, *2, n.4 (S.D. N.Y. Aug. 26, 2008).

## III. <u>CONCLUSION</u>

WHEREFORE, premises considered, Defendants respectfully request the Court to dismiss all of Plaintiffs' claims against Defendants with prejudice and to rule in favor of Defendants on all claims asserted by Defendants against Plaintiffs.

<u>/s/ Ann T. Taylor</u>
D. Brian O'Dell (Florida Bar No. 0659665)
Ann T. Taylor (Florida Bar No. 37228)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800

Attorneys for Saxon Mortgage Services, Inc. and Deutsche Bank National Trust Company ("Deutsche"), as Trustee for NATIXIS 2007-HE2 and through Saxon Mortgage Services, Inc., as its servicing agent and attorney-in-fact

1/1930595.3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 17, 2009, I filed the foregoing document using the CM/ECF system which will provide notice of the foregoing to all persons listed on the attached Service List.

By: _/s/Ann T. Taylor_____
        Ann T. Taylor

## SERVICE LIST

| | |
|---|---|
| Robin Sommers, Esq.<br>THE TICKTIN LAW GROUP, P.A.<br>600 West Hillsboro Blvd.<br>Suite 220<br>Deerfield Beach, FL  33441 | |

1/1930595.3